# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BROOM, CLARKSON, LANPHIER & YAMAMOTO, a Partnership<br><br>**Plaintiff,**<br><br>vs.<br><br>EDWARD KOUNTZE, individually and as Personal Representative of the Estate of Denman Kountze, Jr. in Collier County, Florida,<br><br>**Defendant.** | 8:14CV206<br><br>ORDER |

This matter is before the court on the plaintiff's Motion to Compel Disclosures, Answers to Interrogatories and Response to Request for Production of Documents (Filing No. 54). The plaintiff filed a brief (Filing No. 56) and index of evidence (Filing Nos. 55 and 57) in support of the motion. The defendant filed a brief (Filing No. 58) and index of evidence (Filing No. 59) in response. The plaintiff filed a brief (Filing No. 60) and index of evidence (Filing No. 61) in reply.

## BACKGROUND

This action pertains to the defendant's alleged failure to pay attorneys' fees due to the plaintiff. **See** Filing No. 59-1 - Complaint. The parties entered into an agreement for the provision of legal services on September 15, 2004. *Id.* at Ex. A - Retainer Agreement. The plaintiff claims it provided legal services requested by the defendant in two separate lawsuits. **See** Filing No. 59-1 - Complaint ¶ 6. The plaintiff seeks $10,882.90 in unpaid attorneys' fees for legal services it provided to the defendant in proceedings in Douglas County District Court, an appeal thereof, and the U.S. District Court of Nebraska (Hitchcock Foundation proceedings). **See** *id.*; Filing No. 12 - Rule 26(f) Report p. 3.[1] The plaintiff also seeks $365,718.86 in unpaid attorneys' fees for legal services it provided to the defendant in proceedings in Douglas County Court and an appeal thereof (Heirloom Trust proceedings). **See** Filing No. 59-1 - Complaint ¶ 13; Filing No. 12 - Rule 26(f) Report p. 3. The plaintiff initially filed a complaint to recover

---
[1] All page number references correspond to the numbers assigned when filed in the CM/ECF system.

unpaid attorneys' fees from the defendant in Douglas County District Court on September 25, 2013.  **See** Filing No. 59-1 - Complaint.  On July 17, 2014, the defendant removed the action to this court on the basis of diversity jurisdiction.  **See** Filing No. 1 - Notice of Removal ¶ 10.

The parties filed their joint Rule 26(f) Report on August 29, 2014.  **See** Filing No. 12.  In the Rule 26(f) Report, the defendant stated he intended to challenge the scope of work performed by the plaintiff and the reasonableness of the plaintiff's bills.  *Id.* at 4-5.  Specifically, the defendant claimed the plaintiff failed to perform a number of tasks he requested, the plaintiff never provided itemized bills for services it rendered, the plaintiff's work was unnecessary, duplicative, and outside the scope of retention, and many entries for which the plaintiff seeks legal fees occurred after the plaintiff withdrew as the defendant's attorney.  *Id*.  On September 2, 2014, the court entered an initial progression order permitting the parties to commence discovery.  **See** Filing No. 13 - Order ¶ 6.

On September 24, 2014, the plaintiff served its first set of requests for admissions, first set of interrogatories, and first set of requests for production of documents.  **See** Filing No. 14 - Certificate of Service.  The plaintiff propounded sixty-two numbered requests for admissions.  **See** Filing No. 57-1 - First Requests for Admissions p. 1-9.  In general, the plaintiff's requests sought the defendant to admit the genuineness of dozens of exhibits, including emails to or from the defendant, documents from the Heirloom Trust proceedings, and documents from a Collier County, Florida lawsuit.  **See generally** *id*.  The first set of interrogatories asked the defendant to state his reasons for any requests for admissions he did not unqualifiedly admit, the bases and identity of persons and documents related to the defendant's defenses set forth in the Rule 26(f) Report, his residences from 2004 to the present, the identity of each private investigator or consultant he hired regarding the Heirloom Trust proceedings, and the damages he claims to have suffered with respect to a motion to set aside a default judgment in Douglas County District Court.  **See** Filing No. 57-14 - First Set of Interrogatories p. 1-4.  The plaintiff's first request for production of documents seeks the defendant to produce any documents identified in each of his answers to interrogatories.  **See** Filing No. 57-15 - First Request for Production of Documents p. 1-3.  Production Request No. 2 seeks production of all written

communication between the defendant and the plaintiff, "and any other attorneys working on the Heirloom litigation including, but not limited to, Robert Zuber, David Domina's law firm, Adrian Thomas law firm, Karla Gottschalk, Richard Register, Kathryn Hemenway and including negotiations regarding the 'global' settlement thereof signed on February 22, 2013." *Id*. at 2.

On October 21, 2014, counsel for the defendant, Seth Darmstadter, emailed the plaintiff requesting an extension to November 14, 2014, to respond to the plaintiff's September 24, 2014, discovery requests. **See** Filing No. 57-20 - Email p. 1. The plaintiff agreed to the extension. *Id*. at 2. On November 6, 2014, Darmstadter requested a second extension, to November 18, 2014, and the plaintiff agreed. *Id*. at 5-11. On November 18, 2014, Darmstadter provided the plaintiff with the defendant's responses to the plaintiff's first requests for admissions. *Id*. at 17-18. The defendant responded he was unable to verify whether exhibits contained true copies of emails sent to or from his email accounts because his email accounts "were victimized by one or more illegal hackers" and "have been compromised and closed." **See** Filing No. 57-13 - Response to First Request for Admissions p. 3-6, 8, 10, 12-19. Darmstadter informed the plaintiff the defendant would "serve the other discovery responses later this week." Filing No. 57-20 - Email p. 17-18.

On November 19, 2014, the plaintiff emailed Darmstadter stating, "The agreed upon extension expired yesterday. We have only received responses to Request for Admissions and no responses nor objections to other outstanding discovery. The time for objections to same has expired. Any objections have therefore been waived. We are thus expecting full answers to the outstanding discovery." **See** Filing No. 57-20 - Email p. 46. The plaintiff emailed Darmstadter on December 16, 2014, noting Darmstadter had not returned the plaintiff's call to confer about the defendant's outstanding discovery responses. *Id*. at 47. On the same date, Darmstadter replied he had been covering his partner's cases due to the death of his partner's father, and would send discovery responses "[a]s soon as possible." *Id*. at 48.

On January 1, 2015, Darmstadter left the law firm representing the defendant. **See** Filing No. 59-2 - Affidavit ¶ 5. Jeffrey Greenspan entered his appearance as counsel for the defendant on January 7, 2015. **See** Filing No. 27 - Application For

3

Admission Pro Hac Vice. Darmstadter subsequently withdrew from the case. **See** Filing No. 30 - Order.

On January 6, 2015, the plaintiff emailed both Darmstadter and Greenspan, stating it "need[ed] a date certain, in the immediate future, for an appropriate response to outstanding discovery requests if we are going to avoid a request for court intervention." **See** Filing No. 57-20 - Email p. 49-50. Greenspan and the plaintiff agreed the defendant's outstanding discovery responses would be supplied by January 20, 2015. *Id*. at 52; Filing No. 59-2 - Affidavit ¶¶ 6-8. On January 19, 2015, the plaintiff agreed to extend the deadline to January 28, 2015. **See** Filing No. 59-2 - Affidavit ¶ 9. On January 28, 2015, the plaintiff emailed Greenspan stating, "Please consider this a final effort to obtain long overdue outstanding discovery requests without court action." **See** Filing No. 57-20 - Email p. 64.

The defendant served his answers to the plaintiff's first set of interrogatories on January 28, 2015. **See** Filing No. 57-16 - Answers to First Set of Interrogatories p. 19. The defendant made several general objections, including the first set of interrogatories were vague, overbroad, they exceeded the maximum number of interrogatories allowed pursuant to the court's initial progression order, and the response would be protected by attorney-client privilege and the work-product doctrine. *Id*. at 1-2. The defendant also specifically objected to each of the thirteen interrogatories, but answered Interrogatory Nos. 1-10 "[s]ubject to and without waiving these objections." *Id*. at 3-7. The defendant also served his responses to the plaintiff's first requests for production of documents on January 28, 2015. **See** Filing No. 57-17 - Reponses to First Request for Production of Documents p. 11. The defendant objected on the grounds the requested documents were protected by the attorney-client privilege and the work-product doctrine, the requests were vague, ambiguous, overbroad, unduly burdensome, irrelevant, and the documents were already produced, equally obtainable by the plaintiff, or were already in the plaintiff's possession. *Id*. at 1-2. The defendant also served a privilege log. **See** Filing No. 57-25 - Privilege Log.

On February 2, 2015, the plaintiff sent an email to Greenspan stating, "We expected and are entitled to answers to Interrogatories and response to Requests for Production of Documents - without objections. This was not done. This is an effort to seek compliance without court intervention." **See** Filing No. 57-20 - Email p. 66.

4

Greenspan replied, "[I]n the interest of trying to resolve the issue, can you let me know specifically which objections you have an issue with so that we can have a meet and confer about them[?]" *Id*. at 68. The plaintiff responded on February 3, 2015, it had an issue with "any and all objections" because the defendant's objections were untimely and were therefore waived. *Id*. at 71. The plaintiff and Greenspan discussed the waiver issue in subsequent emails between February 3 and 4, 2015. *Id*. at 73-78.

The plaintiff served the defendant with its second set of interrogatories and second request for production of documents on January 9, 2015. **See** Filing No. 57-18 - Second Set of Interrogatories p. 3; Filing No. 57-29 - Second Request for Production of Documents p. 3. On February 3, 2015, the plaintiff agreed to extend the deadline to February 26, 2015, for the defendant to respond to the second set of written discovery. **See** Filing No. 57-20 - Email p. 73.

On February 11, 2015, the parties filed a joint motion to modify the case schedule. **See** Filing No. 33 - Joint Motion. According to the joint motion, the parties had been "working diligently" to gather documents and answer written discovery, but due to the high volume of responsive documents, the parties agreed additional time was required to complete written discovery. *Id*. ¶¶ 4, 8. The court granted the parties an extension until June 30, 2015, to complete written discovery. **See** Filing No. 34 - Order.

On February 24, 2015, the parties agreed to extend the defendant's deadline until March 5, 2015, to respond to the plaintiff's second set of written discovery. **See** Filing No. 57-20 - Email p. 91. On March 3, 2015, Greenspan emailed the plaintiff he had been working with Google to attempt to gain access to email accounts that had been compromised, and upon gaining access to the accounts, the defendant would supplement his answers to the first set of written discovery. *Id*. at 92. The plaintiff agreed to "hold off" on the defendant's responses to the second set of requests for production and second set of interrogatories. *Id*. at 93. On May 1, 2015, Greenspan and the plaintiff agreed the defendant would provide supplemental responses to the first set of written discovery on May 25, 2015. *Id*. at 99. On May 6, 2015, Greenspan and the plaintiff agreed the supplemental responses would be due May 28, 2015. *Id*. at 102.

On June 2, 2015, the defendant provided supplemental responses to the plaintiff's first request for admissions (Filing No. 57-26), first set of interrogatories (Filing No. 57-27), and first request for production of documents (Filing No. 57-28). On June

23, 2015, the defendant served his answers to the plaintiff's second set of interrogatories (Filing No. 57-23) and response to the plaintiff's second request for production of documents (Filing No. 57-24). The defendant provided over 15,000 pages of digital documents in his supplemental responses to the first request for production. **See** Filing No. 59-2 - Affidavit ¶ 15. The defendant has produced over 30,000 pages of digital documents in total. *Id*. ¶ 21.

On June 23, 2015, the court granted the defendant leave to file a counterclaim. **See** Filing No. 44 - Order. On June 24, 2015, the defendant filed a counterclaim for breach of contract on the bases the plaintiff: overcharged him and engaged in a pattern of overbilling for legal services and performing unnecessary, excessive, unauthorized, and unreasonable work; failed to advise him of the "exorbitant" amount of fees that would result from the courses of action taken in the Hitchcock Foundation proceedings and Heirloom Trust proceedings; failed to advise him of the low chances of success in each proceeding; billed him for personal work performed after the termination of the professional relationship; performed excessive legal research; and failed to properly research and advise him of the law resulting in superfluous and unsuccessful motions and appeals. **See** Filing No. 46 - Counterclaim ¶ 49.

On July 10, 2015, the plaintiff emailed Greenspan stating the defendant's supplemental responses and answers to the plaintiff's first set of discovery were inadequate. **See** Filing No. 57-21 - Email p. 1. The plaintiff again asserted the defendant's objections were not timely and the privilege log did not comply with the court's initial progression order. *Id*. at 1-3. On July 23, 2015, Greenspan sent a letter to the plaintiff in response. **See** Filing No. 57-22 - Letter. Greenspan maintained the defendant provided full and complete responses, despite the objections. *Id*. at 1. Greenspan recognized deficiencies in the privilege log and stated he would provide an amended privilege log with supplemental document production within fourteen days. *Id*. at 1-2. On August 6, 2015, the defendant served second supplemental answers to the plaintiff's first set of interrogatories (Filing No. 57-29), second supplemental responses to the plaintiff's first request for production (Filing No. 57-30), supplemental response to the plaintiff's second set of interrogatories (Filing No. 57-31), and an amended privilege log (Filing No. 57-32).

The plaintiff filed the instant motion on August 25, 2015, seeking an order compelling the defendant to answer the plaintiff's first set of interrogatories (Filing No. 57-14), to produce the documents requested in the plaintiff's first request for production of documents (Filing No. 57-15), and to answer the plaintiff's second set of interrogatories (Filing No. 57-18). **See** Filing No. 54 - Motion p. 1. The plaintiff also requests sanctions including attorney's fees and costs, and the striking of any and all related defenses asserted by the defendant. *Id*. at 3.

The plaintiff asserts the defendant has waived all objections to the first set of discovery, including attorney-client privilege objections, by failing to timely serve objections and by putting privileged attorney-client communications at issue. **See** Filing No. 56 - Brief p. p. 2-5, 9. The plaintiff seeks an order compelling the defendant to answer interrogatories and produce all documents without objections. *Id*. The defendant maintains he has fully answered all interrogatories and provided the plaintiff with over 30,000 pages of digital documents responsive to the plaintiff's requests. **See** Filing No. 58 - Response p. 8. The defendant argues the only information and documents withheld relate to privileged communications between the defendant and attorneys other than the plaintiff. *Id*. Therefore, the primary issue the court must resolve is whether the defendant has waived all objections based on attorney-client privilege.

## ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Broad discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" ***WWP, Inc. v. Wounded Warriors Family Support, Inc.***, 628 F.3d 1032, 1039 (8th Cir. 2011) (alteration in original) (**quoting** Fed. R. Civ. P. 26(b)(1)). Accordingly, relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they

7

hope to obtain and its importance to their case. **See** ***Cervantes v. Time, Inc.***, 464 F.2d 986, 994 (8th Cir. 1972). Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." ***Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).

The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. ***St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.***, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. **See** ***Wagner v. Dryvit Sys., Inc.***, 208 F.R.D. 606, 610 (D. Neb. 2001). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money, and procedure required to produce the requested discovery. **See** *id*.

1. **First Set of Interrogatories**

    a. Failure to Timely Object

Generally, "[t]he responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). "A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." *Id*. "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If an objection is made, "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). "If stipulations to extend the time stated in Federal Rules of Civil Procedure 33, 34, and 36 for responses to discovery would interfere with court imposed discovery deadlines, motion deadlines, or trial dates, the stipulations are effective only upon court order." NECivR 29.1. "All other discovery stipulations are

effective when the parties file a written stipulation signed by all parties that specifies the agreed upon change." *Id*.

The plaintiff argues all the defendant's objections to the plaintiff's first set of interrogatories are waived because they were not made within thirty days. **See** Filing No. 56 - Brief p. 2. There is no legitimate dispute the defendant failed to comply with its obligation to timely respond or object to the first set of interrogatories. The plaintiff served its first set of interrogatories on September 24, 2014. **See** Filing No. 14 - Certificate of Service. Emails between counsel for the defendant and the plaintiff reflect the plaintiff agreed to extend the response deadline to November 18, 2014. **See** Filing No. 57-20 - Email p. 1-11. The defendant did not serve his answers and objections to the plaintiff's first set of interrogatories on November 18, 2014. The defendant did not serve his initial answers and objections to the first set of interrogatories until January 28, 2015. **See** Filing No. 57-16 - Answers to First Set of Interrogatories p. 19. Because the defendant did not timely serve his answers and objections, his objections to the first set of interrogatories are waived unless the court finds good cause to excuse the failure.

A court has wide discretion in determining whether to excuse a party's waiver. ***Cargill, Inc. v. Ron Burge Trucking, Inc.,*** 284 F.R.D. 421, 426 (D. Minn. 2012). The defendant argues good cause exists to excuse his failure to timely object to the first set of interrogatories because he made a good faith effort to comply with deadlines and maintained constant communication with opposing counsel regarding the status of the discovery responses. Filing No. 58 - Response p. 9-11. Emails reflect the parties agreed to November 18, 2014, as the deadline for the defendant to respond to the first set of discovery. **See** Filing No. 57-20 - Email p. 1-11. On November 18, 2014, Darmstadter provided the plaintiff with only the defendant's responses to the first request for admissions and stated he "will serve the other discovery responses later this week." *Id*. at 17. The defendant apparently did not serve the other discovery responses later that week, and on December 16, 2014, the plaintiff emailed Darmstadter noting he had not returned the plaintiff's call to confer about the defendant's outstanding discovery responses. *Id*. at 47. Darmstadter replied he had been covering his partner's cases due to the death of his partner's father and would send discovery responses "[a]s soon as possible." *Id*. at 48. Darmstadter subsequently withdrew from the case at the beginning of January 2015, without providing answers

and objections to the first set of interrogatories.  **See** Filing No. 30 - Order.  Once Greenspan took over representation of the defendant in January 2015, he and the plaintiff agreed to subsequent extensions for the defendant to provide his outstanding discovery responses.  **See** Filing No. 57-20 - Email p. 52; Filing No. 59-2 - Affidavit ¶¶ 6-8.  Although the plaintiff agreed to further extensions, with which the defendant ultimately complied, the plaintiff continued to take the position the defendant's objections were waived as of November 19, 2014.  **See** Filing No. 57-20 - Email p. 66-78.  The defendant provides no explanation or excuse for his inability to timely respond to the plaintiff's interrogatories in November 2014.  Counsel for the defendant did not request a further extension from the plaintiff or the court prior to the November 18, 2014, deadline, or explain why he did not serve the defendant's answers and objections to interrogatories at that time.  The plaintiff actively sought responses from the defendant, but until January 2015, the defendant provided little in the way of communication with the plaintiff regarding the status of discovery.  Thus, the court concludes the defendant has not established good cause to excuse the waiver of objections to the first set of interrogatories.  The court orders the defendant to supplement his answers to the first set of interrogatories without objections.

      b.      Privileged Communications at Issue

In addition to the defendant's waiver for failure to timely serve answers to interrogatories, the plaintiff argues the defendant further waived attorney-client privilege objections by putting privileged attorney-client communications at issue.  **See** Filing No. 56 - Brief p. 5-6.  "In [a] diversity case, [federal courts] apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims." ***Baker v. General Motors Corp.***, 209 F.3d 1051, 1053 (8th Cir. 2000).  Under Nebraska law:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (a) between himself or his representative and his lawyer or his lawyer's representative, or (b) between his lawyer and the lawyer's representative, or (c) by him or his lawyer to a lawyer representing another in a matter of common interest, or (d) between representatives of the client or between the

>       client and a representative of the client, or (e) between
>       lawyers representing the client.

Neb. Rev. Stat. § 27-503(2). "A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Neb. Rev. Stat. § 27-503(1)(d). No privilege exists for "a communication relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer." Neb. Rev. Stat. § 27-503(4)(c). "The party asserting attorney-client privilege has the burden of proving that the information sought is protected." **Nebraska ex rel. Stivrins v. Flowers**, 729 N.W.2d 311, 316 (Neb. 2007). A party may waive the attorney-client privilege by placing communications between lawyer and client into issue. **See Nebraska v. Roeder**, 636 N.W.2d 870, 876 (Neb. 2001). The party asserting the attorney-client privilege impliedly waives it through his own affirmative conduct when: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. *Id*. "'Fairness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege.'" *Id*. (**quoting League v. Vanice**, 374 N.W.2d 849, 856 (Neb. 1985)).

The plaintiff claims the defendant waived all attorney-client privilege objections because he raised as a defense the plaintiff's breach of its duties during its representation of the defendant. **See** Filing No. 56 - Brief p. 3-4. In the defendant's counterclaim, he alleges the plaintiff breached its duties to him by overcharging and overbilling him, performing unnecessary, unauthorized, and excessive work, failing to advise him of the "exorbitant" amount of fees resulting from the plaintiff's representation and his low chances of success, and failing to properly research and advise him of the law. **See** Filing No. 46 - Counterclaim ¶ 49. Similarly, in the Rule 26(f) Report, the defendant claimed the plaintiff failed to perform a number of tasks he requested, the plaintiff never provided itemized bills for services it rendered, the plaintiff's work was unnecessary, duplicative, and outside the scope of retention, and many entries for which the plaintiff seeks legal fees occurred after the plaintiff withdrew as the

11

defendant's attorney.  **See** Filing No. 12 - Rule 26(f) p. 4-5.  The defendant does not dispute communications between him and the plaintiff are at issue and the attorney-client privilege is waived with respect to those communications.  **See** Filing No. 58 - Response p. 11.  The defendant's allegations in his counterclaim and the Rule 26(f) Report clearly place protected communications between him and the plaintiff at issue, and therefore the court finds the defendant has waived any claim of attorney-client privilege to those communications, in addition to his waiver for failure to timely serve his answers.

However, the defendant continues to assert the attorney-client privilege with respect to certain communications between him and other attorneys who also represented him in the Heirloom Trust proceedings and Hitchcock Foundation proceedings.  *Id*. at 13.  The court concludes the defendant's privileged communications with attorneys other than the plaintiff are not vital to the plaintiff's defense against the defendant's defenses and counterclaims.  **See** *Roeder*, 636 N.W.2d at 876 (holding implied waiver of attorney-client privilege occurs where application of the privilege would deny the opposing party access to information vital to his defense).  For example, the defendant claims he directed the plaintiff to file a motion to disqualify, which the plaintiff failed to do.  **See** Filing No. 12 - Rule 26(f) Report p. 5.  Communications between the defendant and the plaintiff would reveal whether the defendant requested the plaintiff to take such action, and the plaintiff's itemized bills or communications with the defendant would reflect whether it acted upon the request.  Resort to privileged communications with the defendant's other attorneys is not necessary for the plaintiff to defend against the defendant's claim.  The defendant's other defenses and counterclaims similarly deal with the plaintiff's actions or inaction and billing during its representation of the defendant.  Such allegations only implicate privileged communications between the defendant and the plaintiff, and not privileged communications with the defendant's other counsel.  The court therefore concludes the defendant did not waive attorney-client objections with all his attorneys by putting his communications with the plaintiff at issue.  This conclusion does not affect the court's determination above that the defendant waived all objections for failure to timely serve his answers.

c. Adequacy of Answers

The defendant contends the plaintiff's arguments regarding his answers to interrogatories are moot because he has fully answered. **See** Filing No. 58 - Response p. 14. Although it is common practice for a party to respond to discovery requests subject to and without waiving objections, such responses prevent the requesting party from knowing whether all information has been provided. **See *Green v. Sunset Fin. Servs., Inc.***, 2012 WL 931976, at *2 (D. Neb. Mar. 20, 2012). **See also *Taylor-Shaw v. Bestway Rent-to-Own***, 2010 WL 2998796, at *3 (E.D. Ark. July 28, 2010). Although the defendant appears to have fully answered the first set of interrogatories, the court orders he supplement his answers to the extent necessary in light of the court's conclusion he has waived all objections by failing to timely serve them.

**2. First Request for Production of Documents**

a. Failure to Timely Respond

The defendant objected to plaintiff's first request for production of documents on the bases of attorney-client privilege and the work-product doctrine. **See** Filing No. 57-17 - Response to First Request for Production of Documents; Filing No. 57-25 - Privilege Log. As with the objections to the first set of interrogatories, the defendant's response and objections to the plaintiff's first request for production of documents were not made within thirty days as provided for in Fed. R. Civ. P. 34(b)(2)(A). Rule 34 does not have an objection waiver provision like Rule 33(b)(4) pertaining to responses to interrogatories. Nevertheless, a failure to make a timely objection to a request for production may result in waiver of otherwise valid objections. **See *Kansas-Nebraska Natural Gas Co. v. Marathon Oil Co.***, 109 F.R.D. 12, 24 (D. Neb. 1983). "[W]aiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." ***Cargill, Inc. v. Ron Burge Trucking, Inc.,*** 284 F.R.D. 421, 426 (D. Minn. 2012) (**quoting *Ayers v. Cont'l Cas. Co.***, 240 F.R.D. 216, 223 (N.D. W.Va. 2007)). "[W]ith respect to at least the attorney-client and work product privileges, a court may but need not consider a privilege waived when a party fails to timely raise the objection." ***Carlson v. Freightliner L.C.C.***, 226 F.R.D. 343, 363 (D. Neb. 2004). Some courts are "particularly reluctant to find waiver of privilege objections unless truly

warranted because of the important policies served by the attorney-client privilege and work-product doctrine." *Mills v. Iowa*, 285 F.R.D. 411, 413 (S.D. Iowa 2012).

Due to the duration of the parties' professional relationship and the nature of the underlying lawsuits spanning several years, the amount of documents responsive to the plaintiff's requests were voluminous. The parties agreed in a joint motion they had been "working diligently" to gather documents, but due to the high volume of responsive documents, the parties agreed additional time was required to complete written discovery. **See** Filing No. 33 - Joint Motion ¶¶ 4, 8. The defendant has produced over 30,000 pages of digital documents. **See** Filing No. 59-2 - Affidavit ¶ 21. Moreover, for a period of time the defendant was unable to access several email accounts containing responsive documents due to his claims of "hacking," about which he kept the plaintiff apprised. In consideration of the above, the court concludes waiver of the defendant's attorney-client and work-product privilege objections to the plaintiff's first request for production is not warranted for the defendant's failure to timely respond.

b. Adequacy of the Privilege Log

The plaintiff argues the defendant's amended privilege log in response to the plaintiff's first request for production of documents does not comply with the court's initial progression order and therefore he has waived all objections. **See** Filing No. 56 - Brief p. 8. The court's order provides:

> If any document is withheld from production or disclosure on the grounds of privilege or work product, the producing party shall disclose the following information about each such document withheld: a description of the document withheld with as much specificity as is practicable without disclosing its contents, including (a) the general nature of the document; (b) the identity and position of its author; (c) the date it was written; (d) the identity and position of its addressee; (e) the identities and positions of all persons who were given or have received copies of it and the dates copies were received by them; (f) the document's present location and the identity and position of its custodian; and (g) the specific reason or reasons why it has been withheld from production or disclosure.

**See** Filing No. 13 - Order p. 2. The defendant's amended privilege log contains the following categories: Bates Start, Bates End, Date, From, Recipients, CC,

Title/Document Description, Reason for Withholding, and Custodian. **See** Filing No. 57-32 - Amended Privilege Log. The defendant's amended privilege log notes whether named recipients or senders are attorneys. *Id*. For example, one entry in the amended privilege log describes an "[e]mail chain re: motion practice in Florida Probate proceedings." *Id*. at 6. The email chain, dated October 20, 2008, was "from" Edward Kountze and the recipient was Richard D. Cimino - Attorney. *Id*. The plaintiff asserts such entry is inadequate because it fails to provide the general nature of the document and does not disclose the author of the email or list any other parties in the email chain. **See** Filing No. 56 - Brief p. 8. The court finds the logical meaning of the term "from" is that such person is the author, in compliance with the initial progression order. Further, the defendant provided other recipients of "email chains" in the "CC" column where applicable. The defendant explains the privilege log as follows:

> Where an email chain is listed in the privilege log, only the most recent communication (i.e. the "top" of the email chain) is being designated as privileged. The privilege log provides every individual who received the "top" of the email chain. The "bottom" of the email chain is either separately privileged and listed in a separate entry in the privilege log, or is responsive and was produced to Plaintiff.

**See** Filing No. 58 - Response p. 17. The court concludes the defendant's amended privilege log is sufficiently detailed and describes each communication with as much specificity as possible without disclosing its contents in compliance with the initial progression order. Therefore the defendant did not waive its claims of attorney-client privilege by failing to produce an adequate privilege log.

c. Privileged Communications at Issue

The plaintiff further argues the documents in the defendant's amended privilege log relate to the defendant's claim the plaintiff breached its duty to the defendant and therefore are not protected by the attorney-client privilege. **See** Filing No. 56 - Brief p. 9. For example, Request No. 2 seeks:

> All e-mails, documents or written communication between Defendant and . . . any other attorneys working on the Heirloom litigation including, <u>but not limited to</u>, Robert Zuber, David Domina's law firm, Adrian Thomas law firm, Karla Gottschalk, Richard Register, Kathryn Hemenway and

15

>including negotiations regarding the "global" settlement thereof signed on February 22, 2013.

**See** Filing No. 57-15 - First Request for Production of Documents p. 2. As addressed above, the defendant's allegations in his counterclaim and the Rule 26(f) Report clearly place communications between him and the plaintiff at issue, and therefore the defendant has waived any claims of attorney-client privilege to those communications. However, the defendant did not place all communications with all other attorneys at issue and did not waive his claim of attorney-client privilege to those communications. The motion to compel further responses to the first request for production of documents is therefore denied.

### 3.     Second Set of Interrogatories

The plaintiff argues the defendant's answers to Interrogatory Nos. 14, 15, 19, and 20 were inadequate and unresponsive. **See** Filing No. 56 - Brief p. 9-10. These interrogatories relate to the defendant's responses to the plaintiff's first request for admissions wherein he repeatedly responded he was unable to verify whether certain exhibits contained true copies of emails sent to or from his email accounts because his email accounts "were victimized by one or more illegal hackers" and "have been compromised and closed." **See** Filing No. 57-13 - Response to First Request for Admissions p. 3-6, 8, 10, 12-19. Interrogatory Nos. 14, 15, 19, and 20 ask the defendant when his emails were compromised, which email accounts were compromised, the identity of persons with access to his computer and email accounts, and address and locations where his computers were located at the time of the alleged hacking and six months before that date. **See** Filing No. 57-18 - Second Set of Interrogatories p. 1-2.

In the defendant's supplemental answers to the second set of interrogatories, he identifies four Gmail email accounts and one Yahoo email account that were "compromised at different times between 2004 and 2014." **See** Filing No. 57-31 - Supp. Answers to Second Set of Interrogatories p. 3. The defendant further answered he regained access to these email accounts in March 2015 "after consulting with employees of Google and Yahoo." *Id*. at 5. The defendant provided supplemental responses to the plaintiff's first request for admissions on June 2, 2015. **See** Filing No.

57-26 - Supplemental Response to Request for Admissions p. 22.  In the defendant's supplemental responses to the plaintiff's first request for admissions, he no longer asserted his email had been hacked nor asserted he was "unable" to verify the genuineness of emails sent to or from his accounts.  *Id*. at 3-20.  Rather, the defendant admitted requested exhibits were true copies of emails to or from him.  *Id*. at 5-13.  Where the defendant did not admit a document was a true and correct copy, he provided explanations unrelated to the hacking in his second supplemental answers to Interrogatory No. 1.  **See** Filing No. 57-29 - Second Supp. Answers to First Set of Interrogatories p. 3-6.  Because the defendant has admitted the requested emails were true and correct copies or provided explanations unrelated to the email hacking, the plaintiff's motion to compel answers to the second set of interrogatories is denied as moot.

4.    **Sanctions**

The plaintiff's motion also seeks an imposition of sanctions.  **See** Filing No. 54 - Motion p. 1.  The court may order sanctions against a party if that party, "after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."  Fed. R. Civ. P. 37(d)(1)(A).  Sanctions may include any reasonable costs or attorney's fees incurred in having to bring a motion to compel.  Fed. R. Civ. P. 37(d)(3).  Sanctions may also include prohibiting the party from supporting designated defenses.  Fed. R. Civ. P. 37(b)(2)(A)(ii).  With regard to motions to compel discovery responses, under Federal Rule of Civil Procedure 37(a)(4)(C), "If the motion is granted in part and denied in part, the court . . . may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."  The Advisory Committee Notes to the 1970 Amendments to Rule 37 indicate that, on many occasions, "the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court."  **See** Fed. R. Civ. P. 37(a)(4) advisory committee notes (1970).  "[T]he rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists."  *Id*.

"A district court has wide latitude in imposing sanctions for failure to comply with discovery[.]" *Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994).

Although based on the defendant's conduct, the plaintiff filed a motion to compel, the court finds the defendant's initial responses to discovery were, in part, substantially justified. The court granted the plaintiff's motion to compel only in part and found the defendant's objections and responses to certain discovery to be sufficient. Under the circumstances, the court finds the imposition of sanctions are not warranted and will not assess sanctions against either party with regard to the plaintiff's motion to compel. Upon consideration,

**IT IS ORDERED**:

The plaintiff's Motion to Compel Disclosures, Answers to Interrogatories and Response to Request for Production of Documents (Filing No. 54) is granted in part and denied in part as set forth in this Order.

### ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 18th day of November, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge